J04




# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

>Opinion No. O-738
>Re:  A sale of land, on which no value
>has been set under Article 7345b,
>at a tax sale for less than the
>taxes due is invalid.

This is in answer to your inquiry in which you say:

"A tax judgment was taken in the District Court of
Navarro County for $3510.26, and court costs amounting
to $154.25. The properties covered by the tax judgment
consist of 4145 acres of land situated in Navarro
County. Proper notice of sale issued under said judg-
ment and at the sale the property was struck off by the
Sheriff to the first and only bidder for $2500.00, and
tax deed was executed by the Sheriff to the purchaser.
The County Attorney did not appear at the sale; hence
no bid was made for the State.

"Since this property on first sale did not bring the
amount of the taxes, penalty and interest, is such sale
valid?

"Was the Sheriff acting within his legal scope in
executing such deed?"

You also ask these additional questions:

"Does the State have a lien on the land, by
virtue of the tax judgment, for the amount of taxes
still unpaid?

"Does the State have the right to hold another
tax sale, under the tax judgment, and sell the land
for the amount of taxes still unpaid?"

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT



As you have not mentioned any other taxing units, we assume that this was a suit for State and County taxes and that no other taxing units were impleaded under the terms of Article 7345b, Vernon's Annotated Civil Statutes. We understand that the court did not incorporate in its judgment a finding of the reasonable fair value of the land in question, which it is authorized to do in some cases under Section 5 of said Article 7345b.

The statutes we are concerned with are Articles 7326 and 7328, Revised Civil Statutes of Texas, which are discussed later in this opinion.

We feel that our answer to your questions must be controlled by the case of Willis v. Martin, 85 S. W. (2d) 1085 (writ of error refused). In that case land that had been fore-closed on in a tax suit was offered for sale by the sheriff at a tax sale, and a party named Willis made a bid in an amount less than the taxes due, and thereupon the County Attorney made a second and higher bid for the State in the amount of the taxes due, but the Sheriff refused the County Attorney's bid on the ground that the County Attorney could only bid in the event there was "no bidder," and the Sheriff accepted the lower bid by Willis, but the Sheriff then changed his mind and refused to execute a deed to Willis; and Willis brought an action for mandamus against the Sheriff asking the court to compel the Sheriff to execute the deed. The District Court refused to mandamus the Sheriff, and that judgment was affirmed by the Court of Civil Appeals (at Beaumont); and without giving any other reasons Chief Justice Walker, who wrote the court's opinion, relied solely on Attorney General's opinion No. 2884, dated May 16, 1932, by Mr. F. O. McKenzie, Assistant under Attorney General Allred, and quoted extensively from it and said: "We have given careful consideration to this opinion by Mr. McKenzie, and believe that he has correctly construed Article 7328. . ."

In view of the fact that the court in the case of Willis v. Martin so whole-heartedly approved Mr. McKenzie's opinion, we believe we are entitled to rely on the reasoning in that opinion; and as it is necessary to read nearly all of the opinion in order to fully appreciate it, we will quote from it extensively, as follows:

"Dear Sir: Your communication of the 4th instant, addressed to the Attorney General is as follows:

"'We are hereby requesting an opinion from your department with reference to the following question on taxation:



Honorable George H. Sheppard, Page 3

"'Under Articles 7326 and 7328, 1925, Revised Statutes, is the State of Texas, through its duly authorized agents, permitted to bid the amount of taxes, costs, penalty and interest included in a judgment of foreclosure, where an outside bidder bids a sum less than the amount of said judgment?'

"The question you propound is a difficult one to answer. Article 7326 provides for the bringing of suits for the recovery of all taxes, interest, penalty and costs due and for the foreclosure of the tax lien upon lands which are liable for the same. Said article also provides that such suits shall be brought as an ordinary foreclosure for debt with averments as to the existence of a lien upon such land for such taxes, and shall pray for judgment for the foreclosure of said lien and sale of said lands as under ordinary execution.

"Article 7328, or so much thereof as is pertinent to your inquiry, is as follows:

"'The proper persons, including all record lien holders, shall be made parties defendant in such suits, and shall be served with process and other proceedings had therein as provided by law in ordinary foreclosure suits in the district courts of this state; and in case of foreclosure an order of sale shall issue and the land sold thereunder as in other cases of foreclosure; but if the defendant or his attorney shall, at any time before the sale, file with the officer in whose hands any such order of sale shall be placed, a written request that the property described therein shall be divided and sold in smaller tracts then (than) the whole, together with the description of such smaller tracts, then such officer shall sell the lands in such subdivisions as defendant may request, and in such case shall sell only as many subdivisions, as near as may be, as are necessary to satisfy the judgment, interest, penalty and costs; and after the payment of the taxes, interest, penalty and costs adjudged against it, the remainder of the purchase price, if any, shall be paid by the sheriff to the clerk of the court, out of which said execution or other final process issued to be retained by him subject to the order of the court for a period of two years, unless otherwise ordered by the court, after which time the court may order the same to be paid to the State Treasurer, who shall hold same in trust to be paid to the owner against whom said taxes



Honorable George H. Sheppard, Page 4

were assessed; provided, any one claiming the same shall make proof of his claim to the satisfaction of the State Treasurer within three years after the sale of said land or lots, after which the same shall be governed by the law regulating escheat.

"'If there shall be no bidder for such land the county attorney, sheriff or other officer selling the same, shall bid said property off to the State for the amount of all taxes, penalty, interest and costs adjudged against such property, and the district clerk shall immediately make report of such sale in duplicate, one to the Comptroller and one to the commissioners court, on blanks to be prescribed and furnished by the Comptroller. Where the property is bid off to the State, the sheriff shall make and execute a deed to the State, using forms to be prescribed and furnished by the Comptroller, showing in each case the amount of taxes, interest, penalty and costs for which sold, and the clerk's fees for recording deeds. He shall cause such deeds to be recorded in the records of deeds by the county clerk in his county, and when so recorded, shall forward the same to the Comptroller. The county clerk shall be entitled to a fee of one dollar for recording each such deed to the State, to be taxed as other costs. When land thus sold to the State shall be redeemed the tax collector shall make the proper distribution of the moneys received by him in such redemption, paying to each officer the amount of costs found to be due, and to the State and county the taxes, interest and penalty found to be due each respectively.'

"The question involves the proper construction of the language, 'if there shall be no bidder for such land.' This means, of course, the particular land which is being sold under order of sale issued on a tax foreclosure judgment. Does the word, 'bidder' mean one who bids for the land although he bids less than the amount of the judgment; or does it mean or imply one who bids a sum equal to or exceeding the amount of the State's judgment? I have been unable to find a case where the question has been passed on by the courts, and hence will undertake to answer the same in accordance with what I conceive to be adopted rules of construction.

"'Another occasion for construing a statute is where uncertainty as to its meaning arises not alone from ambiguity of language employed, but from the fact that giving a literal interpretation to the words will lead to such unreasonable,

Honorable George K. Sheppard, Page 5

unjust or absurd consequences as to compel a conviction that they could not have been intended by the Legislature.' 25 R. C. L., Sec. 214, p. 959.

"We quote the above because it may be said that the language of the statute, 'if there shall be no bidder' is perfectly plain and unambiguous and requires no construction. In this connection, I call attention to the following taken from the same authority, viz:

"'It often happens that the true intention of the lawmaking body, though obvious, is not expressed by the language employed in a statute when that language is given its literal meaning. In such cases, the carrying out of the legislative intent, which, as we have seen, is the prime and sole object of all rules of construction, can only be accomplished by departure from the literal interpretation of the language employed. Hence, the courts are not always confined to the literal meaning of a statute; the real purpose and intent of the legislature will prevail over the literal import of the words.' 25 R. C. L., Sec. 222, page 967.

"Numerous authorities from other states and the United States and some from Texas are cited in support of the above doctrine of the text.

"'The paramount rule of construction is to find out the legislative intent, which is the law and must prevail.' Ellis County v. Thompson, 95 Texas 22, 32.

"'The Legislative intent constitutes the law.' McInery vs. City of Galveston, 58 Texas 334; Russell vs. Farquhar, 55 Texas 355; Rool vs. Wedemyer, 50 Texas 287; Dodson vs. Bunton, 81 Texas 374, 28 S. W. 1061.

"'Strictly speaking, there is but one rule of construction, and that is the legislative intent must govern; all other canons of interpretation, so called, are but grounds of arguments resorted to for the purpose of ascertaining the true meaning of the law.' Mills County vs. Lampasas County, 90 Texas 606, 40 S. W. 404; Imperial Irrigation Company vs. Hayne, 104 Texas 395, 138 S. W. 575, 581; Koy vs. Schneider, 110 Texas 369, 221 S. W. 880.

"'The intention of the Legislature in enacting a law is the law itself.' Edward vs. Morten, 92 Texas 152, 153, 46 S. W. 792.

Honorable George H. Shappard, Page 6

          "'The great fundamental rule in construing statutes
is to ascertain and give effect to the intent of the
legislature.' 36 CYC 1106, 2.

          "We are unable to bring ourselves to the belief that
in all cases where the State has a judgment condemning
land to be sold for the payment of taxes, the Legislature
intended the State should be without the power to protect
its interest and that of the county. But it is our
opinion that what is meant by the language of the statute,
'if there shall be no bidder for such land' the county
attorney, sheriff or other officer selling the same, shall
bid said property off to the State for the amount of all
taxes, penalty, interest and costs adjudged against such
property, means that if there is no person who bids the
amount of the judgment against said land. Although he
may bid less, it is made the duty of one of the officers
named to protect the interests of the State by bidding
to the extent authorized by the statute above quoted. If
any bidder should bid the amount of the State's judgment
against the land or more, the State then cannot bid; for
in such circumstances the State would be competing as a
mere purchaser when it is authorized to go no farther
than is necessary to protect its interests.

          "We think there is language in said Article which
tends to support this construction. The article states
that in case of foreclosure, an order of sale shall
issue and the land sold thereunder as in other cases of
foreclosure. It further provides after the officer
executing the order of sale has received the proceeds
and from them paid the taxes, interest, penalty and costs
adjudged against the land, as to what he shall do with
the excess. Nowhere is there any provision prescribing
the procedure to be followed in a case where the land
does not bring the amount of the judgment against it.
In an ordinary foreclosure sale, Article 2218, which
relates thereto, provides a procedure in event the pro-
ceeds of the property sold does not satisfy the judgment,
directing the sheriff to make the balance as under exe-
cution, using the unsatisfied order of sale as an execu-
tionl No such alternative is provided for in the statute
governing delinquent tax sales under order of sale. From
the provisions of the statutes directing the sheriff to
pay from the proceeds the taxes, interest, penalty and
costs, and the 'remainder of the purchase price, if any'
to the clerk of the court, there arises the clear implica-
tion that the land is to bring at least enough to satisfy
the judgment. In case the land is bid in for the State,

Honorable George H. Sheppard, Page 7

the bid must be for the full amount against the land, and provision is further made that when said land shall be redeemed, 'the tax collector shall make the proper distribution of the moneys received by him in such redemption, paying to each officer the amount of costs found to be due, and to the State and county the taxes, interest and penalty found to be due each respectively.' So it appears that whether the land is sold to an outside bidder or bid in for the State, provision is made for the ultimate payment in full of the taxes, interest and penalty.

"It is obvious that in the event the land is sold to an outside bidder for less than the amount adjudged against it, complications and difficulties will arise, and the Legislature has furnished no guide for their solution. One part of the judgment is State taxes, another part county taxes, and still other sums which go to make up the total of the judgment are composed of costs of different officers. In such a case the judgment could not be paid in full and all the parties at interest could not get all their money. What should be done in that case? Is the State's interest superior to the county's interest or will the money be prorated between them? Are the officers to be paid first, or are their claims to be postponed until the claims of the State and county have been paid? If paid first, it might result that there would not be enough to pay even the costs going to the officers, and there would not be enough left to satisfy the claims both of the State and the county. I think it reasonable to assume that the Legislature intended no such complications; otherwise, it would by appropriate enactment have provided for them.

"We are aware that this opinion is in conflict with an opinion sent out from this department on the 6th day of February, 1923, but with such opinion we cannot agree and from it we respectfully dissent.
. . .

"Assume that the State has judgment foreclosing a tax lien to the amount of $250.00 on land worth $5,000.00. Suppose that at the sheriff's sale the sum of $10.00 is bid by an outsider, and the land is knocked off to him. Under the construction which we are combating, and in accordance with what may be the literal language of the

Honorable George H. Sheppard, Page 8

statute, the State's hands would be tied and its officers could only stand by, helpless, and see the State's interests sacrificed in that manner. After the sale, it would be the duty of the sheriff to execute a deed to the purchaser and then the taxpayer would have two years in which to redeem his land and he could redeem it by paying double the amount of such bid. Such a thing could easily happen and no doubt has happened heretofore. We cannot believe that the Legislature intended any such absurd results.

"We reiterate our conclusion, in answer to your question, that by the term 'bidder,' used in the statute giving the State the right to bid in lands sold under a tax judgment, the Legislature meant a person who bids at least the amount of the judgment against the land, taxes, interest, penalty and costs, and if no such bidder appears, then the proper officer may bid in the land for the State as the law provides; and that no person would necessarily be considered a 'bidder', within the meaning of the statute, so as to preclude the proper officer from bidding same in for the State, unless his bid is for a sum at least sufficient to satisfy the judgment against the land."

Mr. McKenzie's opinion was written before the passage of said Article 7345b, providing for the impleading of other taxing units, and for the court incorporating in its judgment a finding of the reasonable fair value of the land, but those matters are not involved in this case, and we believe the reasoning of his opinion applies to the question before us. We construe his opinion as holding that a bid at a tax sale is void if it is for less than the amount of taxes due.

The bid in this case was clearly void, the would-be purchaser being a private person and not a taxing unit, and it naturally follows that the sale was void, and therefore invalid, because there could not have been a sale without a bid. It likewise follows that the sheriff had no authority to execute the deed. The status of the parties is the same as it was before the sale, and the State still has its lien and the right to hold a tax sale under the judgment in the same manner as if the other sale had never been held.

Of course, this opinion does not apply in a case in which the court incorporated in its judgment a finding of the reasonable

fair value of the land at an amount less than the amount of the judgment.

We believe that the foregoing answers your questions.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Cecil C. Rotsch

Cecil C. Rotsch
Assistant

CCR:GO

APPROVED FEB 2, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN